IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **CHARLIE ALFRED GANNON**, | Case No. 2:18-cv-00859-IM |
| Petitioner, | **OPINION AND ORDER** |
| v. | |
| **MR. T. BOWSER,** | |
| Respondent. | |

**IMMERGUT, District Judge.**

Petitioner Charlie Alfred Gannon ("Petitioner"), an individual in custody at the Two Rivers Correctional Institution, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254, alleging five grounds for relief, including ineffective assistance of counsel. Because Petitioner's claims are procedurally defaulted, Petitioner's Habeas Petition (ECF No. 2) is DENIED, and this proceeding is DISMISSED, with prejudice.

///

PAGE 1 – OPINION AND ORDER

**BACKGROUND**

## I.     Trial Court Proceedings

On January 13, 2014, a Clackamas County grand jury returned an indictment charging Petitioner with seven counts of Sodomy in the First Degree and two counts of Sexual Abuse in the First Degree. Rept's Exs. (ECF No. 102.), Ex. 102. The charges arose from Petitioner's alleged abuse of a young child, AE, on several occasions between June 25, 2010 and May 21, 2013. *Id.*

Petitioner retained counsel ("trial counsel") and entered into plea negotiations with the State. On the advice of trial counsel, Petitioner agreed to forego trial and plead guilty to two counts of Attempted Sodomy in the First degree, in part, because he hoped to spare AE the potential trauma of testifying at trial. Resp't Exs. 103; 104 at 8. In exchange, the State agreed to dismiss the remaining charges listed in the indictment, and to recommend a sentence of eighteen years in prison followed by post-prison supervision, mandatory sex offender registration, and no fines. *Id.*

On July 1, 2014, Petitioner appeared for a plea hearing in the Clackamas County Circuit Court. Resp't Ex. 104. After reviewing the plea petition, the trial court confirmed with Petitioner that he had discussed the matter with trial counsel and was satisfied with his advice, and that Petitioner understood that pleading guilty meant he would waive certain rights. *Id.* at 2. The trial court also confirmed with Petitioner that his plea was knowing and voluntary, and that no one had made threats or promises that had influenced his decision to plead guilty. *Id.* Petitioner then formally entered a guilty plea on both counts of Attempted Sodomy in the First Degree, and the trial court, finding a factual basis on which to do so, accepted the pleas. *Id.* at 3.

During sentencing, the prosecutor reviewed the facts underlying Petitioner's guilty pleas, explaining that the victim, AE, was four years-old when the abuse began. Resp't Ex. 104 at 4. Petitioner, who had a relationship with and lived with AE's biological grandmother, was

PAGE 2 – OPINION AND ORDER

considered AE's "quasi-grandfather," and frequently provided childcare for AE and her brother at his residence. Resp't Ex. 104 at 4.

The prosecutor explained that on May 23, 2013, AE playfully hit her father in the upper thigh near his groin and then asked if she could "kiss it" after he said "ow." Resp't Ex. 104 at 4. When AE's father explained to her that she should not kiss anyone's private area, AE disclosed that Petitioner had kissed her private area. *Id.* AE reiterated the allegation to her mother, and demonstrated on a doll by lifting the doll's skirt and "making a sucking motion by touching her mouth to the private area." *Id.* at 5. Upon further questioning, AE disclosed that Petitioner made her touch him, that it happened a lot, and that "there was some touching between his pee-pee and her pee-pee." *Id.* at 5.

AE's parents reported the disclosures to police and took AE to the Children's Center for an interview. *Id.* There, AE made similar disclosures and further revealed that Petitioner made her touch his penis with her mouth by using popsicles and whipped cream. *Id.* Police later recovered whipped cream and popsicles from the various locations around Petitioner's residence that AE had described. *Id.*

The prosecutor then reviewed Petitioner's prior criminal history, which included two convictions for driving under the influence of intoxicants and previously unprosecuted allegations that Petitioner had touched another child. *Id.* After statements from AE and her parents and objections from defense counsel, the trial court accepted the prosecutor's recommendation and sentenced Petitioner to a custodial term of eighteen years followed by post-prison supervision. *Id.* at 12; Resp't Ex. 101.

///

///

PAGE 3 – OPINION AND ORDER

## II.    Post-Conviction Proceedings

Petitioner did not pursue a direct appeal, but filed a *pro se* petition for post-conviction relief

("PCR") in Umatilla County. Resp't Ex. 105. Petitioner's appointed post-conviction attorney

("PCR counsel") filed an amended petition raising a single ground for relief based on trial

counsel's ineffectiveness for failing to retain a child psychologist to evaluate the reliability of AE's

disclosures. Resp't Exs. 106, 113. The amended petition omitted various claims raised in the *pro*

*se* petition, including claims that trial counsel was ineffective for failing to adequately investigate

the facts of the case, failing to disclose the existence of a letter and its contents before pressuring

Petitioner into pleading guilty, and harboring a conflict of interest due to personal embarrassment

stemming from the nature of charges. Resp't Exs. 105 at 7–8. Petitioner did not agree with PCR

counsel's decision to omit claims he initially raised *pro se*, and thus filed a lengthy motion pursuant

to *Church v. Gladden*, 244 Or. 308 (1966),[1] seeking their inclusion in the amended petition. Resp't

Ex. 115 at 24–25, 29–30.

The Defendant moved to dismiss the amended petition, arguing that Petitioner failed to

attach "affidavits, records or other documentary evidence" supporting his claim as required by

Oregon law. Resp't Ex. 114 at 2 (citing OR. REV. STAT. § 138.580). At a hearing on the motion,

PCR counsel conceded that he had no documentary evidence to substantiate the single claim raised

in the amended petition, and that he had informed Petitioner that he was "unable . . . to further

support that claim." Resp't Ex. 117 at 6. PCR counsel explained that he had retained an expert

who, after reviewing the relevant records of the case, had "advised that they could not assist us in

---

[1] In *Church*, the Oregon Supreme Court held that a litigant must inform the court of an attorney's failure to follow a legitimate request, and that the litigant can ask to have counsel replaced or ask the court to require the attorney to comply with the litigant's request. 244 Or. at 311–12.

that claim." *Id.* at 7. The PCR court then took the motion to dismiss under advisement, noting that

Petitioner's *Church* motion would be addressed in a separate hearing. *Id.* at 8.

As promised, the PCR court subsequently held a separate *Church* hearing, and asked PCR

counsel to explain why Petitioner's *Church* claims could not be asserted in the amended petition.

Resp't Ex. 118 at 4. PCR Counsel replied:

> Basically, I had gone over [Petitioner]'s claims with him and everything we had
> done regarding investigating those claims.
>
> And I guess primarily, starting off, this was a case involving a plea, so we had to
> get past that issue to begin with, which we had tried to do with -- with regard to a
> number of claims and avenues that we explored, but, ultimately, were unsuccessful
> in.
>
> So when [the] discussion with [Petitioner] turned to what's -- what's left, I advised
> him that this was probably the sole remaining thing that he could do to get claims
> that he felt had merit on the record.
>
> There's a number of claims that I advised him aren't even cognizable under Oregon
> law; but, you know, he wanted to bring those claims to the Court. And, of course,
> this will be the vehicle to do it.
>
> So, as I said, we were unable to certify any of these claims and we have looked
> independently ourselves. But we're pretty constrained because of the plea nature of
> the case.

*Id.* at 4–5.

The PCR court then invited Petitioner "to make any statements [he would] like" concerning

his *Church* claims. *Id.* at 5. Petitioner stated that he had listened to PCR counsel's instructions to

"[j]ust put [everything he knew about his *Church* claims] in writing[.]," and that PCR counsel had

"been pretty cooperative . . . with this stuff." *Id.* at 6–7. He emphasized, however, that he had no

legal training, and stated that he did not "know where to go from here." *Id.* at 6–7.

In response, the PCR court confirmed that it had each of Petitioner's claims and

"supporting allegations of facts," and that it could "read through them and understand what [he

was] saying." *Id.* at 8. The PCR court also clarified that the purpose of the *Church* hearing was to

PAGE 5 – OPINION AND ORDER

determine whether the asserted claims should be included in the amended petition, but noted that

"the rules require [PCR counsel] to certify [such claims] as meritorious and he can't do that . . .

under what you've got alleged here." *Id.* at 8. The PCR court then stated that it would again review

Petitioner's *Church* motion despite having reviewed it twice before, but that if no cognizable

claims could be identified in the motion, "then, essentially, it fails to state a claim that we can

present in Oregon court for your matter." *Id.* at 8–9.

In a subsequent written opinion, the PCR court granted the defendant's motion to dismiss,

citing PCR counsel's concession that "an expert for the petitioner . . . could not upon examination

support the claim." Resp't Ex. 116 at 2. The PCR court also denied Petitioner's *Church* motion in

its entirety, finding, among other things, that the asserted grounds for relief "do not allege facts

that, if true, . . . would give rise to a claim for relief," "are 'meritless,' and even being liberally

construed fail to state a claim upon which relief may be granted," and failed to demonstrate that

trial counsel was ineffective under the Oregon and United States Constitutions. *Id.* at 8.

On appeal, Petitioner's appellate counsel filed a brief pursuant to *State v. Balfour*, 311 Or.

434 (1991),[2] certifying that after thoroughly reviewing the record and consulting Petitioner and

trial counsel about the case, he could not identify "any arguably meritorious issues on appeal."

Resp't Ex. 120 at 10. Appellate counsel afforded Petitioner "a reasonable opportunity to raise any

issue" in Section B of the *Balfour* brief, in which Petitioner raised a single assignment of error:

> Umatilla County Circuit Court erred by denieing [sic] [PCR] Counsel's six motions
> to access [sic] Petitioners original trial Audio, Video the In Camera Inspection,
> Order Court Arotectective [sic], In Camera INS-pection [sic] Cares NW Records,

---

[2] Under *Balfour*, counsel is not ethically bound to withdraw when faced with only non-meritorious issues on appeal. Rather, the attorney may file an appellant's brief divided into two parts, with Section A containing a brief statement of the case sufficient to "apprise the [appellate] court of the jurisdictional basis for the appeal," and Section B containing any assignments of error the appellant wishes to raise. *Balfour*, 311 Or. at 451–52.

> In Camera Inspection of DHS Records, Video Tape Recordings and Record's —
> Cares Northwest.

*Id.* at 48. The Defendant-Respondent refuted Petitioner's claim, arguing that the PCR court had

not erred because "it ultimately ordered production of the records, and [PCR] counsel had the

opportunity to inspect them." Resp't Ex. 121 at 3. The Oregon Court of Appeals affirmed without

opinion, *Gannon v. Myrick*, 290 Or. App. 172 (2018), and the Oregon Supreme Court denied

review. *Gannon v. Myrick*, 362 Or. 794 (2018).

### III.    Federal Habeas Proceedings

On May 16, 2018, Petitioner filed a Petition for Writ of Habeas Corpus in this Court, raising

five grounds for relief as follows:

> **Ground One:** Denial of Effective Assistance of Counsel. Ineffective Assistance of
> Trial Counsel.
>
> **Ground Two:** Illegal sentence or sentence not authorized by law and/or in violation
> of []Eighth Amendment to the United States Constitution.
>
> **Ground Three:** Known use of false evidence in Police Report.
>
> **Ground Four:** Oregon's ORS 138.525 law, is Unconstitutional, because it permits
> Abritrary [sic] Gover[n]ment Action in violation of the due process and equ[a]l
> Protection clause of the Fourteenth Amendment, United States Constitution rights,
> due process.
>
> **Ground Five:** [PCR] Hearing was [held] on DATE: 02/12/2016 in Prejudicial
> Atmosphere.

Respondent urges the Court to deny habeas relief on the basis that all five grounds for relief

asserted in the petition are procedurally defaulted. Resp. to Pet (ECF No. 34), at 6.

## DISCUSSION

### I.    Exhaustion and Procedural Default

#### A.    Legal Standards

A habeas petitioner generally must exhaust all remedies available in state court, either on

direct appeal or through collateral proceedings, before a federal court may consider granting

habeas relief. *See* 28 U.S.C. § 2254(b)(1)(A) (instructing that a court may not issue a writ of habeas corpus on behalf of an individual in state custody unless "the applicant has exhausted the remedies available in the courts of the State"); *see also Smith v. Baldwin*, 510 F.3d 1127, 1137 (9th Cir. 2007) (noting that a prisoner must first exhaust available remedies before a federal court may consider the merits of a habeas petition). Generally, a petitioner satisfies the exhaustion requirement "by fairly presenting the federal claim to the appropriate state courts . . . in the manner required by the state courts, thereby 'afford[ing] the state courts a meaningful opportunity to consider allegations of legal error.'" *Casey v. Moore*, 386 F.3d 896, 915–16 (9th Cir. 2004) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986)) (alteration in original); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (holding that "[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete rounds of the state's established appellate review process").

If a petitioner failed to present his claims to the state courts in a procedural context in which the merits of the claims were actually considered, the claims have not been fairly presented to the state courts and are therefore not eligible for federal habeas corpus review. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). In this respect, a petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule, or failed to raise the claim at the state level at all. *Carpenter*, 529 U.S. 446, 451(2000); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). An individual in state custody is barred from raising procedurally defaulted claims in federal court unless he "can demonstrate cause for the default and actual prejudice as a result of the alleged

violation of federal law or demonstrate that failure to consider the claims will result in fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

> **B.**     **Analysis**
>
> **1.**     **Grounds One through Five are Procedurally Defaulted**

Respondent argues that Petitioner presented a single claim on post-conviction appeal which is not raised in Grounds One through Five, and thus Petitioner failed to fairly present his claims to the state's highest court on post-conviction review. Resp't Resp. (ECF No. 34), at 8. Because Petitioner can no longer assert his claims in state court, Respondent argues that Grounds One through Five are procedurally defaulted. *Id*. Petitioner does not dispute that he failed to present his claims to Oregon's highest court, but argues that he did everything he could to fairly present his claims by filing a *Church* motion promoting their inclusion in the Amended PCR Petition.

Fair presentation required Petitioner to raise his claims to the Oregon Supreme Court in a procedural context in which it would assess the merits of his claims. Petitioner did not include Grounds One through Five in his petition for review to the Oregon Supreme Court, and thus the highest state court did not have an opportunity to pass on the merits of his claims. Resp't Ex. 122. Accordingly, Petitioner failed to fairly present his claims, and because he can no longer do so, his claims are procedurally defaulted. *See* OR. REV. STAT. § 138.510(3) (setting forth a two-year limitation period in which to file for postconviction relief); OR. REV. STAT § 138.550(3) (instructing that all grounds for relief must be asserted in the original or amended postconviction relief petition unless the grounds could not reasonably have been raised).

Petitioner argues that his failure to present his claims to Oregon's highest court should be excused because the post-conviction proceedings in this case constituted an "utterly ineffective

corrective process" under 28 U.S.C. § 2254(b)(1)(B).[3] Reply (ECF No. 38), at 2–12. Specifically, Petitioner alleges that his *Church* motion raised a number of cognizable claims, but that the PCR court, without hearing any evidence, "inexplicably and illogically found that his *Church* motion did not even 'establish a claim.'" *Id.* at 8–9. Petitioner thus alleges that because the PCR court simply accepted PCR counsel's "overly broad and nonspecific representation" that he had investigated and could not substantiate Petitioner's *Church* claims, the PCR proceedings were "wholly ineffective as a means of enforcing the Sixth Amendment guarantee of effective counsel." *Id.* at 8, 10.

Petitioner, however, did not raise the PCR court's denial of his *Church* claims on appeal, and thus "needs no excuse from the exhaustion requirement because he has technically exhausted his state remedies through his procedural default." *Smith*, 510 F.3d at 1139. As the Supreme Court has noted, "[a] habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion [because] there are no state remedies any longer 'available' to him." *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). Thus, the relevant inquiry is whether Petitioner can overcome the procedural default, not whether the exhaustion requirement may be excused entirely. *See Smith*, 510 F.3d at 1139 (finding "the exceptions to the exhaustion requirement set forth in § 2254(b) . . . irrelevant to [the] petition" where the petitioner's claims were technically exhausted through procedural default, and instead determining whether the procedural default could be excused "under the applicable exception to that rule"). Even if Petitioner had not abandoned his *Church* claims on appeal, "a *Church* motion is most analogous

---

[3] 28 U.S.C. § 2254(b)(1)(B)(ii) provides that a habeas petitioner need not exhaust the remedies available in the state courts where "circumstances exist that render [the available state corrective process] ineffective to protect the rights of the applicant."

to a motion to amend a complaint, something which a court may deny if it finds that the claims to be added are not viable. Such rulings do not render the judicial process ineffective." *Galindo v. Cain*, Case No. 2:17-CV-00105-MO, 2019 WL 2746722, at \*4 (D. Or. July 1, 2019).

Petitioner also argues that even if exhaustion is not excused, he made significant efforts to present his claims during his PCR proceedings and thus "effectively complied" with the exhaustion requirement. Reply at 12. Specifically, Petitioner alleges that because "he was thwarted in his efforts to secure a meaningful hearing on his [*Church*] claim[s]," his claims should be deemed exhausted as in *Clemmons v. Delo*, 124 F.3d 944, 947–48 (8th Cir. 1997). *Id.* In that case, the Eighth Circuit considered whether it could properly review the habeas petitioner's *Brady* claim despite his failure to raise the issue on appeal from the denial of post-conviction relief. *Clemmons*, 124 F.3d at 947. Reviewing the record, the Eighth Circuit found that the petitioner had instructed appellate counsel to raise the *Brady* issue, but that appellate counsel refused, explaining hat he had "made every argument . . . that [he] felt could be supported by law and evidence." *Id.* at 948. Undeterred, the petitioner filed a motion in the Missouri Supreme Court for leave to raise the issue in a supplemental brief *pro se*, which was denied without comment. *Id.* The Eighth Circuit determined that under the unique circumstances of the case, the petitioner had fairly presented the *Brady* claim, reasoning that he had called the Missouri Supreme Court's attention to the claim by filing a motion to raise the issue *pro se*, and that there was nothing else "he could have done, as a practical matter, to present the claim to that Court for decision on the merits." *Id.*

Here, PCR counsel omitted numerous claims from Petitioner's amended petition for post-conviction relief, which Petitioner later sought to include by filing a *Church* motion *pro se*. After a hearing, the PCR court denied Petitioner's *Church* motion, finding that the claims asserted failed to state a claim, lacked merit, and failed to demonstrate trial counsel was constitutionally

ineffective. Although Petitioner could have requested to proceed *pro se* so that he himself could raise the claims in an amended petition, he did not do so. Petitioner then made no attempt to challenge the PCR court's denial of his *Church* motion on appeal or otherwise bring his *Church* claims to the attention of the Oregon Supreme Court. The circumstances here thus are distinguishable from the unique circumstances presented in *Clemmons*, and the Court does not find that Petitioner's efforts rendered his claims properly exhausted so as to avoid default. Accordingly, Petitioner's claims are barred absent a showing of cause and prejudice or actual innocence to excuse the default.

### 2.      Petitioner has not Established Cause and Prejudice to Excuse the Default

In the alternative, Petitioner argues that his procedural default is excused pursuant to *Maples v. Thomas*, 565 U.S. 266 (2012) and *Martinez v. Ryan*. Pet'r's Br. (ECF No. 26), at 17–19. Petitioner alleges that default is excused under *Maples* because both PCR counsel and appellate counsel abandoned him, and that default is excused under *Martinez* because PCR counsel was ineffective in failing to raise several claims concerning the ineffectiveness of trial counsel. Neither standard is met here.

### a.      "Cause" Under *Maples*

Petitioner alleges that PCR counsel "effectively argued *against* his client and explicitly refused to certify his [*Church*] claims," and that appellate counsel likewise failed to "even write a genuine brief," instead writing "a *Balfour* brief in which he failed to argue any issues." Pet'r's Br. at 18–19. Petitioner thus argues that both PCR counsel and appellate counsel abandoned him because he was "forced to fend for himself" in the state courts, and that such abandonment constitutes "cause" to excuse his default under *Maples*. *Id.* at 19. The Court is not persuaded.

In *Maples*, both of the petitioner's *pro bono* post-conviction attorneys left their firm and obtained new employment that disqualified them from representing the petitioner while his post-conviction petition was still pending in state court. Neither attorney informed the petitioner or sought leave from the court to withdraw as counsel of record or to substitute counsel. As a result, the petitioner was not notified when his post-conviction petition was denied, and he subsequently missed the filing deadline on appeal. 565 U.S. at 275–76. The Supreme Court held that under the "extraordinary circumstances quite beyond his control[,]" the petitioner had "shown ample cause . . . to excuse the procedural default into which he was trapped when counsel of record abandoned him without a word of warning." *Id.* at 290.

Here, neither PCR counsel nor appellate counsel abandoned Petitioner "without a word of warning." Rather, PCR counsel and appellate counsel both reviewed Petitioner's case, evaluated his claims, presented those claims that were viable, if any, to the state courts, and provided guidance as to Oregon's *Church* and *Balfour* procedures so that Petitioner could raise any outstanding claims he wished. Indeed, Petitioner expressly stated during his *Church* hearing that PCR counsel had been "pretty cooperative," and did not dispute appellate counsel's representation to the Oregon Court of Appeals that he had thoroughly reviewed the record, discussed the case with Petitioner and trial counsel, and had given Petitioner an opportunity to raise any issue he wished when no viable claims could be identified. That PCR and appellate counsel did not agree with Petitioner's own assessment of his case and the strength of the claims he wished to raise does not constitute abandonment, and therefore Petitioner has not demonstrated cause to excuse procedural default under *Maples*.

///

///

PAGE 13 – OPINION AND ORDER

**b.    "Cause" Under *Martinez***

Petitioner next argues that the ineffective assistance of PCR counsel excuses his procedural default under *Martinez*. Specifically, Petitioner alleges PCR counsel "failed to assert and develop substantial claims of ineffective assistance of trial counsel based on trial counsel's effective coercion of the [guilty] plea and other instances of deficient performance recited in the *Church* motion." Reply at 14. Further, Petitioner claims that PCR counsel "erroneously believed that because [Petitioner] had entered a guilty plea, that restricted the types of claims that could be brought in a post-conviction case." *Id.*

The ineffective assistance of post-conviction counsel generally does not constitute "cause" to excuse a procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 752 (1991) (holding that because there is no constitutional right to counsel in post-conviction proceedings, a petitioner "must 'bear the risk of attorney error that results in a procedural default'") (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). However, the Supreme Court recognized a narrow exception to this general rule in *Martinez*: "Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Martinez*, 566 U.S. at 9; *see also Detrich v. Ryan*, 740 F.3d 1237, 1244 (9th Cir. 2013) (noting that under *Martinez*, "a procedural default by state PCR counsel in failing to raise trial-counsel IAC is excused if there is 'cause' for the default"). This narrow exception applies in Oregon where, by law, ineffective assistance claims must be raised and addressed in a PCR proceeding. *See State v. Robinson*, 25 Or. App. 675, 550 P.2d 758 (1976) (holding ineffective-assistance claims are "properly resolved only in a postconviction proceeding"); *Sexton v. Cozner*,

679 F.3d 1150, 1159 (9th Cir. 2012) (acknowledging that Oregon requires claims for ineffective assistance to be raised in a collateral proceeding).

To establish cause to excuse procedural default under *Martinez*, Petitioner must show first that his underlying claim of ineffective assistance of trial counsel is substantial insofar as it has "some merit." *Martinez*, 566 U.S. at 14. Next, he must demonstrate that his PCR attorney was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984), for failing to raise the claim. "[T]o fulfill this requirement, a petition must not only show that PCR counsel performed deficiently, but also that this prejudiced petitioner, i.e. that there was a reasonable probability that, absent the deficient performance, the result of the post-conviction proceedings would have been different." *Runningeagle v. Ryan*, 825 F.3d 970, 982 (9th Cir. 2017). Such a finding would necessarily require the Court to conclude that there is a reasonable probability that the trial-level ineffective assistance claim would have succeeded had it been raised. *Id.*

Petitioner has not established that his underlying ineffective assistance claims are "substantial," that PCR counsel's performance fell below an objective standard of reasonableness in declining to assert them in the amended petition, or that Petitioner was prejudiced as a result. To the contrary, the record demonstrates that the PCR court had a hearing to explore the ineffectiveness claims he seeks to raise here, thrice reviewed the detailed factual allegations supporting those claims, and found those claims to be meritless or non-cognizable. "Nothing in petitioner's briefing or the record suggests a contrary result." *Hendershot v. Nooth*, Case No. 2:16-cv-00130-SU, 2017 WL 7832735, at *3 (D. Or. Nov. 13, 2017), *findings and recommendation adopted*, Case No. 2:16-cv-00130-SU, 2018 WL 1125623 (D. Or. Feb. 16, 2018).

Moreover, because Petitioner has not established that his ineffective assistance of trial counsel claims are "substantial," PCR counsel "could not have been ineffective for failing to raise

the ineffective assistance of counsel claim[s] in state court." *See Sexton*, 679 F.3d at 1161 (holding PCR counsel could not have been ineffective for failing to raise IAC claims where trial counsel was not ineffective). Even if PCR counsel's failure to raise the ineffectiveness claims constituted deficient performance under *Strickland*, the PCR court's decisive rejection of those claims as meritless demonstrates that the outcome of the PCR proceedings would not have been different. Accordingly, Petitioner has failed to carry his burden to establish that his procedural default is excused under *Martinez*.

## II.   Errors in State PCR Proceedings Are Not Cognizable

Even if procedural default did not bar relief in this case, Ground Five, which alleges that Petitioner's PCR proceeding was held in a prejudicial atmosphere, is not cognizable for federal habeas review. *See Cooper v. Neven*, 641 F.3d 322, 331–32 (9th Cir. 2011) (finding grounds for relief "arising out of the state trial court's consideration of [the petitioner's] last state habeas petition" were not cognizable because "errors in the post-conviction review process [are] not addressable through habeas corpus proceedings") (citing *Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir. 1989)). Accordingly, habeas relief is denied as to Ground Five.

## III.   Evidentiary Hearing

Petitioner seeks an evidentiary hearing on the merits of his ineffectiveness claims and to demonstrate cause and prejudice under *Martinez* to excuse the procedural default of Grounds One through Five. Based on the foregoing, however, an evidentiary hearing is neither necessary nor in the interests of judicial economy. *See Schriro v Landrigan*, 550 U.S. 465, 474 (2007) (where the record in the case precludes habeas relief, a district court is not required to hold an evidentiary hearing); *see also Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir.1998) (evidentiary hearing not

required on issues that can be resolved by reference to state court record). Accordingly, Petitioner's request for an evidentiary hearing is denied.

## CONCLUSION

Based on the foregoing, the Petition for Writ of Habeas Corpus (ECF No. 2) is DENIED, and this proceeding is DISMISSED, with prejudice. Petitioner has not made a substantial showing of the denial of a constitutional right, and therefore this Court DENIES a Certificate of Appealability. *See* 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

DATED this __28th__ day of January, 2021.

Karin J. Immergut
United States District Judge